No. 13-1986

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

JAMES MARTIN DEEMER

*Plaintiff-Appellant,*

– v. –

JEFFREY A. BEARD ET AL.,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:12-cv-01143 WWC)
The Honorable William W. Caldwell

---

## BRIEF OF APPELLANT

---

Philip D. Lauer
 LAUER & SLETVOLD, P.C.
 701 Washington Street
 Easton, PA 18042
 (610) 258-5329

Charles A. Rothfeld
Paul W. Hughes
Michael B. Kimberly
Jason R. LaFond
 MAYER BROWN LLP
 1999 K Street NW
 Washington, DC 20006
 (202) 263-3000
 phughes@mayerbrown.com

*Counsel for Plaintiff-Appellant*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................ii

Introduction................................................................................... 1

Statement of Jurisdiction ............................................................... 3

Statement of the Issues ................................................................. 3

Statement of Related Cases ........................................................... 3

Statement of the Case ................................................................... 4

Statement of the Facts .................................................................. 4

    A.    Pennsylvania Parole Law ................................................ 5

    B.    Deemer's Incarceration History................................... 6

    C.    Deemer's Futile Efforts To Secure Release................ 8

    D.    Deemer's Section 1983 Claim ...................................... 9

Standard of Review........................................................................ 9

Summary of the Argument........................................................... 10

Argument...................................................................................... 11

I.    *Heck* Does Not Bar Deemer's Claim .................................... 11

    A.    This Court Has Not Addressed Whether *Heck* Applies In Situations Where Federal Habeas Was Never Available ....... 13

    B.    *Heck* Does Not Bar The Claim Of An Individual Who Never Had Access To Federal Habeas ..................................... 17

        1.    Section 1983 provides a federal forum to vindicate federal rights.................................. 18

        2.    Because *Heck* reconciles federal habeas and Section 1983, it does not apply where habeas was never available ......................................................... 19

        3.    The majority of circuits recognize that *Heck* does not apply in these circumstances.................................... 24

    C.    Deemer Never Had Access To Federal Habeas ....................... 27

Conclusion ................................................................................... 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bush v. Philadelphia Police Dep't,*
  387 F. App'x 130 (3d Cir. 2010) ................................................................. 16

*Carr v. O'Leary,*
  167 F.3d 1124 (7th Cir. 1999) ................................................................... 26

*Cohen v. Longshore,*
  621 F.3d 1311 (10th Cir. 2010) ................................................. 17, 25, 27

*Drayer v. Del.,*
  173 F. App'x 997 (3d Cir. 2006) ............................................................... 15

*Entzi v. Redmann,*
  485 F.3d 998 (8th Cir. 2007) ..................................................................... 27

*Figueroa v. Rivera,*
  147 F.3d 77 (1st Cir. 1998) ................................................................. 26, 27

*Gilles v. Davis,*
  427 F.3d 197 (3d Cir. 2005) ............................................................ *passim*

*Guerrero v. Gates,*
  442 F.3d 697 (9th Cir. 2006) ....................................................... 14, 15, 16

*Hears v. Pa. Bd. of Probation & Parole,*
  851 A.2d 1003 (Pa. Commw. Ct. 2004) ................................................ 5, 6

*Heck v. Humphrey,*
  512 U.S. 477 (1994) ........................................................................ *passim*

*Huang v. Johnson,*
  251 F.3d 65 (2d Cir. 2001) ........................................................................ 26

*Launders v. Com., Dep't of Corr.,*
  2012 WL 8679810 (Pa. Commw. Ct. Jan. 5, 2012) ................................... 5

*Martin v. Pa. Bd. of Probation & Parole,*
  840 A.2d 299 (Pa. 2003) .............................................................................. 5

*Mendoza v. Meisel,*
  270 F. App'x 105 (3d Cir. 2008) ....................................................... 10, 16

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Mitchum v. Foster,*
   407 U.S. 225 (1972) .......................................................... 18, 19

*Monell v. Dep't of Soc. Servs.,*
   436 U.S. 658 (1978) ............................................................... 18

*Morrow v. Balaski,*
   685 F.3d 1126 (3d Cir. 2012) ................................................ 13

*Morrow v. Fed. Bureau of Prisons,*
   610 F.3d 1271 (11th Cir. 2010) ............................................ 26

*Muhammad v. Close,*
   540 U.S. 749 (2004) ............................................. 12, 23, 24, 27

*Nelson v. Campbell,*
   541 U.S. 637 (2004) ............................................................... 23

*Nonnette v. Small,*
   316 F.3d 872 (9th Cir. 2002) ........................................... 14, 26

*Phillips v. Cnty. of Allegheny,*
   515 F.3d 224 (3d Cir. 2008) .................................................. 10

*Powers v. Hamilton Cnty. Pub. Defender Comm'n,*
   501 F.3d 592 (6th Cir. 2007) ....................................... 12, 25, 27

*Preiser v. Rodriguez,*
   411 U.S. 475 (1973) ................................................... 19, 20, 21

*Randell v. Johnson,*
   227 F.3d 300 (5th Cir. 2000) ................................................. 27

*Spencer v. Kemna,*
   523 U.S. 1 (1998) ...................................................... 22, 23, 25

*Stevenson v. Carroll,*
   495 F.3d 62 (3d Cir. 2007) ...................................................... 9

*United States v. Caraballo-Rodriguez,*
   2013 WL 4017157 (3d Cir. Aug. 8, 2013) .............................. 13

*Wallace v. Kato,*
   549 U.S. 384 (2007) ............................................................... 24

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Wells v. Office of Dist. Att'y for Philadelphia Cnty., PA,*
    468 F. App'x 180 (3d Cir. 2012)............................................................3, 17

*Williams v. Consovoy,*
    453 F.3d 173 (3d Cir. 2006) ...............................................10, 13, 15, 16

*Wilson v. Johnson,*
    535 F.3d 262 (4th Cir. 2008)...................................................................26

**Statutes**

28 U.S.C. § 2254....................................................................................11, 17

42 U.S.C. § 1983...............................................................................*passim*

# INTRODUCTION

A state's unlawful confinement of an individual is a prototypical violation of federal constitutional rights. The federal habeas statute provides a federal forum for incarcerated individuals to vindicate these rights. But some individuals never have meaningful access to federal habeas—for example, those confined for too short a period of time for the habeas process to be completed before the petitioner's sentence terminates. The sole question in this appeal is whether an individual—who, through no fault of his or her own, never had access to federal habeas—may vindicate an unlawful confinement claim by way of a Section 1983 suit.

Pennsylvania imprisoned James Martin Deemer for a year and a day in excess of the maximum term of his sentence. It did so by failing to give him credit for time he served on a Pennsylvania parole detainer.

While incarcerated, Deemer pursued the available state remedies to challenge his illegal confinement. But Deemer was released from prison before a court ruled on the merits of his claim, and the state court—at Pennsylvania's urging—then dismissed his challenge as moot.

Deemer subsequently filed this Section 1983 lawsuit, again contending that he was unlawfully imprisoned. But the district court dismissed his complaint pursuant to the favorable-termination rule of *Heck v.*

*Humphrey*, 512 U.S. 477 (1994), which generally precludes a prisoner from challenging the legality of confinement through Section 1983.

As the district court found, this case squarely presents the question whether *Heck* applies in circumstances where a claimant, through no fault of his or her own, never had access to federal habeas. A majority of the circuits have found that *Heck* does not apply in such a situation. But believing itself bound by contrary authority from this Court, the district court dismissed Deemer's lawsuit.

That conclusion was wrong. As recent decisions from this Court make clear, the precise question at issue here is open in this Circuit.

And the majority of the circuits are correct: *Heck* does not foreclose Section 1983 claims by individuals, like Deemer, who would otherwise lack *any* federal remedy for a violation of the U.S. Constitution. Instead, *Heck* simply reconciles the carefully-calibrated federal habeas regime with Section 1983. Where a prisoner *does* have access to habeas, the habeas remedy—and the strictures that Congress has placed on it—operate as a claimant's sole federal remedy. But where a claimant has no recourse to habeas (or, like here, lacks *any* means to challenge his or her confinement), *Heck* does not bar a Section 1983 suit.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 as Deemer's Section 1983 claim arises under federal law. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the district court's dismissal of the complaint was a final decision.

## STATEMENT OF THE ISSUES

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that Congress's creation of a federal habeas remedy generally precludes a prisoner from challenging the legality of his or her confinement by means of a lawsuit pursuant to 42 U.S.C. § 1983. This case presents the question whether *Heck* applies in circumstances where, through no fault of the plaintiff, habeas relief was never available.

Recently, this Court acknowledged that it has "not yet squarely decided whether *Heck* applies" in cases where habeas is "unavailable." *Wells v. Office of Dist. Att'y for Philadelphia Cnty., PA*, 468 F. App'x 180, 181 (3d Cir. 2012) (per curiam).

## STATEMENT OF RELATED CASES

There are no related cases or proceedings.

## STATEMENT OF THE CASE

Deemer brought this Section 1983 claim, contending that defendant-appellees confined him beyond the lawful expiration of his sentence. J.A.3 (D. Ct. Op.). Accordingly, Deemer maintains that defendants violated his federal constitutional rights. *Id.*

Defendants moved to dismiss the lawsuit on the basis of *Heck v. Humphrey*'s favorable-termination rule. J.A.3 (D. Ct. Op.). Deemer, by contrast, argued that *Heck* does "not apply to this case because he had diligently pursued his state-court remedies and his challenge to his confinement was unsuccessful only because the state court dismissed it as moot upon his release from incarceration." J.A.4. Although the district court noted that Deemer's "argument is not without force," the court was of the view that "the Third Circuit has decided otherwise." *Id.*

Deemer filed a timely notice of appeal. J.A.1.

## STATEMENT OF THE FACTS

Pennsylvania detained Deemer for more than a year beyond the lawful expiration of his sentence. But the district court's construction of *Heck* would leave Deemer without any remedy whatsoever.

### A.     Pennsylvania Parole Law.

When a parolee violates a condition of his or her parole, the parole board may file a detainer warrant against the individual. Accordingly, when a parole violator is arrested on a new charge, he may be subject to detention for two, separate reasons: 1) the parole detainer and 2) the new criminal charge.

In these circumstances, the Supreme Court of Pennsylvania has established a clear, common-sense rule as to how time spent incarcerated is to be credited; "where an offender is incarcerated on both a [parole] Board detainer and new criminal charges, all time spent in confinement **must** be credited to either the new sentence or the original sentence." *Martin v. Pa. Bd. of Probation & Parole*, 840 A.2d 299, 309 (Pa. 2003) (emphasis added). Courts have applied this rule with some regularity. *See*, *e.g.*, *Launders v. Com., Dep't of Corr.*, 2012 WL 8679810 (Pa. Commw. Ct. Jan. 5, 2012).

The Commonwealth Court's decision in *Hears v. Pa. Bd. of Probation & Parole*, 851 A.2d 1003, 1007 (Pa. Commw. Ct. 2004), is illustrative. There, an individual was incarcerated for 4 months and 24 days on both a parole detainer and a new criminal charge. Eventually, the individual was convicted of the new charge and sentenced to four days of time served. *Id*. The court held that, pursuant to *Martin*, the individual was entitled to re-

ceive the balance of his time served—4 months and 20 days—as a credit against the original sentence on which he was paroled. *Id.*

Notwithstanding the clarity of this law, Pennsylvania inexplicably refused to apply it to Deemer.

### B.    Deemer's Incarceration History.

Deemer was convicted in Pennsylvania state court on two counts of retail theft and sentenced to a maximum term of six years imprisonment. J.A.4 (D. Ct. Op.).

On April 19, 2005, Deemer was released on parole. J.A.13 (Compl.). At that point, Deemer had served 2 years and 237 days of his 6-year maximum sentence. *Id.* Accordingly, upon his release, his parole term was set to expire on August 25, 2008. *Id.*

On May 23, 2006, the Pennsylvania State Board of Probation and Parole (the Board) declared Deemer delinquent on his parole; Deemer was then incarcerated on August 24, 2006. J.A.13 (Compl.). Deemer lost time during this period, and his maximum detention date was extended to October 26, 2008. *Id.*

On June 25, 2007, Deemer was again released on parole, with a condition that he report to a residential drug treatment program. Because his parole expiration date was still October 26, 2008, 489 days remained on

Deemer's sentence. Deemer, however, failed to report to the drug treat-
ment program, and the Board again declared him delinquent. J.A.5 (D. Ct.
Op.); J.A.13 (Compl.).

On November 14, 2007, Deemer was arrested and charged in Warren
County, New Jersey, based on a warrant and detainer issued that same
day by the Pennsylvania Parole Board. J.A.17 (Bd. Order).[1] The prosecutor
dismissed the Warren County charges on November 14, 2008. J.A.14
(Compl.). At that point, Deemer had been incarcerated for one year and
one day—this is the period of incarceration relevant to this proceeding.[2]

On February 13, 2009, Deemer was returned to Pennsylvania. The
Board calculated Deemer's release date as June 17, 2010—i.e., the *entire*
489 days that remained on his Pennsylvania sentence. J.A.14. The Board
rejected Deemer's contention that he should receive credit for the 366 days

---

[1] The Complaint asserts that Deemer was held in Warren County on a
drug charge. J.A.13 (Compl.). But it appears that Deemer's drug charge
was in Bergen County. This issue will be remedied upon remand.

[2] After the Warren County charge was dismissed, Deemer was trans-
ferred to Bergen County, New Jersey, to serve time on a 1993 conviction
for which his probation was revoked. J.A.13-14 (Compl.). Deemer was sen-
tenced to 240 days, less 76 days for time previously served. *See* J.A.14
Deemer did not receive credit on his Bergen County sentence for his time
in Warren County custody. *Id.* Deemer was incarcerated in Bergen County
between November 15, 2008 and February 13, 2009, at which time he was
paroled. *Id.* That period of imprisonment is not at issue here.

7

he was incarcerated in Warren County pursuant to the Pennsylvania pa-role detainer.

Deemer was released from prison on June 17, 2010. J.A.14. If he had been credited the 366 days, he would have been released on June 16, 2009.

## C.    Deemer's Futile Efforts To Secure Release.

Deemer challenged the Board's calculation of his maximum release date via a petition for administrative review filed with the Board. J.A.14 (Compl.). Deemer again argued that the Board improperly denied him credit for the 366 days he served pursuant to the Board's detainer in War-ren County, New Jersey, but on December 18, 2009, the Board denied his petition. J.A.17-18 (Bd. Order).[3]

Deemer appealed this decision via a petition for review with the Commonwealth Court of Pennsylvania. J.A.14 (Compl.). The court had not acted on Deemer's petition by June 17, 2010, the date that he was re-leased. That same day, the Board filed a suggestion of mootness. On June

---

[3]   In denying Deemer's petition, the Board appears to have taken the po-sition that Deemer was convicted on his Warren County charge, and that all time served in New Jersey could be attributed to that conviction. *See* J.A.17. But this view is untenable because the Warren County charge was dismissed, and he did not receive credit in Bergen County for the time he served in Warren County. Indeed, that the Board committed *some* sort of error was obvious on the face of its order: the Board notes that Deemer was sentenced in New Jersey to *240 days*, but it recognizes that he was in-carcerated in New Jersey for a total of *457 days*. *Id.* Ignoring this clear disparity, the Board affirmed its original calculation. J.A.18.

24, 2010, the Commonwealth Court granted the State's motion, dismissing Deemer's petition as moot because he "has been released." J.A.19.

### D.    Deemer's Section 1983 Claim.

With no other recourse, Deemer filed this suit. He seeks damages for imprisonment in excess of his statutory maximum. J.A.15.

Defendants moved to dismiss on the basis of the favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). *See* Mot. to Dismiss Compl., Dkt. #4 (Aug. 24, 2012). Deemer, however, maintained that *Heck* rule does not apply because he had no practical access to federal habeas. *See* Opp. to Mot. to Dismiss, at 5-11, Dkt. #7 (Sept. 20, 2012).

The court below noted that Deemer's "argument is not without force," but it concluded that this Court's precedent dictates "otherwise." J.A.4. The court thus granted defendants' motion to dismiss. J.A.10.

## STANDARD OF REVIEW

The Court of Appeals exercises plenary (i.e., *de novo*) review over the District Court's decision to dismiss Deemer's Section 1983 claim; it accepts as true the factual allegations in the Complaint, and it construes the Complaint in the light most favorable to Deemer. *See Stevenson v. Carroll*, 495 F.3d 62, 65 (3d Cir. 2007). This requires the Court "to review the Dis-

trict Court's order anew and without any deference." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

## SUMMARY OF THE ARGUMENT

*Heck* does not bar Deemer's Section 1983 claim because he never had the opportunity to obtain federal habeas relief.

A.  The district court was wrong to conclude that the Court has settled this issue; last year, the Court noted that the question remains open. Although the district court pointed to *Gilles v. Davis*, 427 F.3d 197, 209-10 (3d Cir. 2005), and *Williams v. Consovoy*, 453 F.3d 173, 177-78 (3d Cir. 2006), as controlling, neither case involved a claimant, like Deemer, who never had recourse to federal habeas. Indeed, following *Gilles* and *Williams*, the Court adopted precisely the rule we advance here in an unpublished opinion. *See Mendoza v. Meisel*, 270 F. App'x 105 (3d Cir. 2008).

B.  As the majority of other circuits have properly concluded, *Heck*'s favorable termination rule does not apply in circumstances where the claimant has no ability whatsoever to pursue federal habeas. *Heck* is a rule of statutory construction that harmonizes the potential conflicts between the federal habeas statute—which is itself a civil rights remedy—and a Section 1983 claim. When an individual may obtain relief through the federal habeas statute, he or she must use that specialized remedy to

challenge confinement. But Section 1983 remains available for individuals—like Deemer—who never had access to federal habeas.

C. Deemer had no access to federal habeas—nor to any equivalent remedy in any other court—to challenge his unlawful confinement. *Heck* therefore does not bar his claim.

## ARGUMENT

## I. *HECK* DOES NOT BAR DEEMER'S CLAIM.

In *Heck v. Humphrey*, 512 U.S. 477, 480 (1994), the Supreme Court addressed the "intersection" between the federal habeas statute, 28 U.S.C. § 2254, and the Civil Rights Act of 1871, 42 U.S.C. § 1983. The Court concluded that "in order to recover damages for allegedly unconstitutional conviction or imprisonment," a Section 1983 claimant generally "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 486-87. This is the so-called "favorable-termination rule" of *Heck*.

The claimant in *Heck*, however, was a prisoner *who was presently incarcerated. Heck*, 512 U.S. 478-79. He had previously filed and *lost* federal habeas actions. *Id.* at 479. He then brought a new suit, pursuant to Sec-

tion 1983, for money damages. *Id*. at 479-80. Accordingly, "[t]he *Heck* Court was not confronted with a factual scenario * * * in which the [Section] 1983 claimant has no recourse in habeas." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 602 (6th Cir. 2007).

Concurring in the *Heck* judgment, Justice Souter (joined by Justices Blackmun, Stevens, and O'Connor), explained that it would be "sensible" to read the majority's opinion as applying only to individuals who have access to habeas. *Heck*, 512 U.S. at 500. If *Heck* were interpreted otherwise, it would create an "untoward result"—barring a federal forum for claims brought by individuals "who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences." *Id*.

Subsequently, the Supreme Court noted that it has yet to "settle" whether the "unavailability of habeas * * * may * * * dispense with the *Heck* requirement." *Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004).

This case squarely presents the question whether the favorable-termination rule of *Heck* applies to a claimant who, through no fault of his or her own, never had access to a federal court. That question is open in

12

this Court. The Court should join the majority of circuits that have found that a Section 1983 claim may proceed in these circumstances.

### A. This Court Has Not Addressed Whether *Heck* Applies In Situations Where Federal Habeas Was Never Available.

As an initial matter, the sole issue presented in this appeal—whether *Heck* bars a Section 1983 action where a claimant never had access to a federal habeas remedy—is an open question in this Court. The district court's contrary conclusion was wrong.[4]

The district court pointed to two published cases from this Circuit that it believes "rejected" Deemer's argument as to the limited scope of *Heck*—*Gilles v. Davis*, 427 F.3d 197, 209-10 (3d Cir. 2005), and *Williams v. Consovoy*, 453 F.3d 173, 177-78 (3d Cir. 2006). J.A.7. But, upon closer examination, neither case addressed the issue presented here.

In *Gilles*, the claimant, Timothy Petit, was arrested for disorderly conduct while preaching controversial views on a college campus. 427 F.3d at 201-02. Rather than face trial, however, Petit voluntarily "enter[ed] into Pennsylvania's Accelerated Rehabilitation Disposition program." *Id.* at

---

[4]   If the Court were to disagree with us on this point, we respectfully request that the Court *sua sponte* consider an *en banc* hearing. *See*, *e.g.*, *United States v. Caraballo-Rodriguez*, 2013 WL 4017157 (3d Cir. Aug. 8, 2013); *Morrow v. Balaski*, 685 F.3d 1126 (3d Cir. 2012). As we detail below (*infra* at 24-27), the question at issue here is subject to deep split among the circuits.

209. Because he did so, the state agreed to expunge his record upon successful completion of the program. *Id.*

Petit later brought a Section 1983 claim against the campus police alleging violations of his First Amendment rights. *Gilles*, 427 F.3d at 209. The district court dismissed Petit's claim as barred by *Heck*. This Court affirmed. The Court considered, and rejected, the proposition that Petit could avoid *Heck*'s favorable termination requirement because at the time of his claim he "ha[d] no recourse under the habeas statute." *Id.* at 210.

The facts of *Gilles* differ from the facts of this case in an important and controlling respect. It was Petit's choice to "waive his right to prove his innocence" in exchange for avoiding "potential jail time." *Gilles*, 427 F.3d at 209. Thus, Petit lacked access to habeas because he *voluntarily* bargained that right away. If Petit had not waived his rights, he could have challenged the legality of his arrest and confinement.

The rule we propose here is not contrary to *Gilles*; the law of the Ninth Circuit proves this point. In *Nonnette v. Small*, 316 F.3d 872, 876-77 (9th Cir. 2002), the Ninth Circuit held that *Heck* does not bar a claim where recourse to federal habeas was never available. Subsequently, however, the Ninth Circuit barred a claim by an individual whose "failure timely to achieve habeas relief [was] self-imposed." *Guerrero v. Gates*, 442

F.3d 697, 705 (9th Cir. 2006). Such voluntary action may not be used as "a shield against the implications of *Heck.*" *Id.* In *Gilles*, Petit's waiver of habeas rights was exactly this kind of "self-imposed" limitation.

In one of the first cases to apply *Gilles*, the Court did not end its inquiry at the absence of favorable termination. Instead, citing *Guerrero*, the Court found dispositive "that habeas corpus relief was unavailable" *because of* appellant's own actions—"because he failed to seek such relief in a timely manner." *Drayer v. Del.*, 173 F. App'x 997, 999 (3d Cir. 2006).

In *Williams*, the claimant brought a Section 1983 claim challenging the revocation of his parole. 453 F.3d at 176. As with *Gilles*, however, the claimant *voluntarily* failed to pursue habeas remedies. That is, Williams was incarcerated for more than *three years* after his parole was revoked,[5] but he failed to appeal the revocation of his parole, file a federal habeas action, or pursue any other legal challenge during that time. *Id.* at 175 & n.1. Rather, Williams challenged his confinement only *after* he was re-

---

[5] The briefs make clear the length of Williams' incarceration. *See* Br. of Appellees Consovoy at 16, *Williams*, 453 F.3d 173 (No. 04-3569), 2006 WL 3368186 ("[Williams] had the opportunity to seek review of the arrest and parole revocation for over three years, from the time he was returned to custody on October 15, 1997, until he served his maximum sentence on November 19, 2000, and chose to not seek administrative or judicial review."); Reply Br. at 2, *Williams*, 453 F.3d 173 (No. 04-3569), 2006 WL 3368185 (acknowledging that "Williams did not appeal the revocation or his parole").

leased. In finding his claim barred by *Heck*, the Court carefully qualified its language; "suits that would otherwise be barred by *Heck* are not cognizable **merely** because habeas relief is no longer available to the plaintiff." *Id.* at 179 (emphasis added). This result, which fully accords with *Guerrero*, is consistent with the rule we advocate.

Indeed, following both *Gilles* and *Williams*, the Court, in an unpublished opinion, adopted *precisely* the rule that we advance. In *Mendoza v. Meisel*, 270 F. App'x 105, 106 (3d Cir. 2008), a plaintiff asserted that a police department harassed and racially profiled him in conjunction with several traffic offenses. Citing Second Circuit authority, the Court stated that "*Heck* does not bar a [Section] 1983 claim where the plaintiff is unable to challenge his conditions of confinement through a petition for federal habeas corpus." *Id.* at 107. Because the claimant "was never incarcerated, or otherwise in custody, federal habeas relief has never been available to him and, therefore, *Heck* cannot apply." *Id.*[6]

Last year, the Court acknowledged that it had "not yet squarely decided whether *Heck* applies" where "a remedy in habeas is unavailable"

---

[6]    Likewise, in *Bush v. Philadelphia Police Dep't*, 387 F. App'x 130, 132 (3d Cir. 2010), the Court suggested the interpretation of *Heck* we advocate: "Although Bush is no longer in custody, because he properly could, and previously did, avail himself of the habeas corpus remedy, *Heck* applies to him even though he has since been released."

because, for example, a claimant is never "'in custody' * * * for federal habeas purposes." *Wells v. Office of Dist. Att'y for Philadelphia Cnty., PA*, 468 F. App'x 180, 181 (3d Cir. 2012).

### B. *Heck* Does Not Bar The Claim Of An Individual Who Never Had Access To Federal Habeas.

The Court should answer that open question by holding that *Heck*'s favorable-termination rule does not apply in these circumstances. That rule is designed to reconcile conflicts that otherwise would result from differences between the federal habeas statutes (*e.g.*, 28 U.S.C. § 2254) that provide specialized mechanisms to challenge the constitutionality of confinement, on the one hand, and the Civil Rights Act of 1871 (42 U.S.C. § 1983) that provides an omnibus mechanism for vindication of federal constitutional violations, on the other. When an individual *can*, as a practical matter, pursue federal habeas, that serves as the individual's sole federal remedy. But where an individual *cannot* access habeas, Section 1983 remains available.

Thus, when a claimant is "unable to obtain habeas relief," and that "inability [was] not due to the [plaintiff]'s own lack of diligence," "it would be unjust to place his claim for relief beyond the scope of [Section] 1983." *Cohen v. Longshore*, 621 F.3d 1311, 1316-17 (10th Cir. 2010). This rule ac-

17

cords with the remedial purposes of Section 1983, the statutory reconciliation that is at the heart of *Heck*, and the approach taken by most circuits.

>1.    Section 1983 provides a federal forum to vindicate federal rights.

"[T]here can be no doubt that [Section 1983] was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 700-01 (1978).

One of the principal goals motivating the enactment of the Civil Rights Act of 1871, 42 U.S.C. § 1983, was to ensure that victims of *federal* constitutional transgressions had access to a *federal* remedy in a *federal* forum. "As a result of the new structure of law that emerged in the post-Civil War era—and especially of the Fourteenth Amendment, which was its centerpiece—the role of the Federal Government as a guarantor of basic federal rights against state power was clearly established." *Mitchum v. Foster*, 407 U.S. 225, 238-39 (1972).

Thus, "Section 1983 opened the *federal* courts to private citizens, offering a uniquely *federal* remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum*, 407 U.S. at 239 (emphasis added). Congress's purpose of ensuring federal courthouse doors were open made good sense: At

the time of the statute's enactment, "state courts were being used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights." *Id*. at 240.

Given the broad remedial purpose of Section 1983, coupled with its design to provide a federal forum for the vindication of federal constitutional rights, there should exist a strong presumption that Section 1983 is available as a means to challenge illegal state action.

> 2.    Because *Heck* reconciles federal habeas and Section 1983, it does not apply where habeas was never available.

*Heck* is a rule of statutory construction that harmonizes two overlapping, and potentially conflicting, statutes; the scope of the *Heck* rule, accordingly, is controlled by the scope of the habeas remedy. Like Section 1983, federal habeas is a form of a civil rights statute; it permits incarcerated individuals to assert that their confinement is in conflict with the U.S. Constitution. But unlike Section 1983, federal habeas has certain unique procedural limitations, including an exhaustion requirement. The *Heck* doctrine thus inhabits "the intersection" of these two statutes. *Heck*, 512 U.S. at 480.

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), state prisoners brought a Section 1983 suit to challenge a deprivation of good-time credits. They

sought an injunction to compel restoration of the credits, which would have reduced their sentences and, as a practical matter, required their immediate release. *Id.* at 476. Such relief, the Court found, "fell squarely within [the] traditional scope of habeas corpus." *Id.* at 487.

Unlike Section 1983, habeas requires "exhaustion of adequate state remedies as a condition precedent to the invocation of federal judicial relief." *Preiser*, 411 U.S. at 489. This policy is designed "to avoid the unnecessary friction between the federal and state court systems that would result if a lower federal court upset a state court conviction without first giving the state court system an opportunity to correct its own constitutional errors." *Id.* at 490. It "would wholly frustrate explicit congressional intent" to allow a plaintiff to "evade this requirement" through use of a Section 1983 suit. *Id.* at 489-90.

To resolve "the interrelationship of two important federal laws" (*Preiser*, 411 U.S. at 482), the Court concluded that, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus" (*id.* at 500). This is a rule of statutory construction: "even though the literal terms of [Section] 1983 might seem to

cover" a challenge overlapping with habeas, "Congress has passed a more specific act to cover that situation." *Id*. at 489.

*Heck* extended *Preiser* to prisoner suits seeking damages. Otherwise, Section 1983 "would permit a collateral attack on the conviction through the vehicle of a civil suit," thus circumventing the carefully-designed limitations on federal habeas corpus. *Heck*, 512 U.S. at 484. Because "allowing a state prisoner to proceed directly with a federal-court [Section] 1983 attack on his conviction or sentence 'would wholly frustrate explicit congressional intent' as declared in the habeas exhaustion requirement, the statutory scheme must be read as precluding such attacks." *Id*. at 498 (Souter, J., concurring) (quoting *Preiser*, 411 U.S. at 489).

Accordingly, in considering a case where the litigant had brought a federal habeas suit and lost (*Heck*, 512 U.S. at 479), the Court explained that "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id*. at 487. "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*.

Justice Souter (joined in his concurrence by Justices Blackmun, Stevens, and O'Connor), noted that a "sensible way to read" *Heck* is that

its favorable-termination requirement applies only to *"prison inmates seeking [Section] 1983 damages in federal court for unconstitutional conviction or confinement."* 512 U.S. at 500 (emphasis added). Individuals not "in custody" for purposes of federal habeas, such as "people who were merely fined" or "who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences," need not show "favorable termination." *Id*. at 500. The *Heck* doctrine should not, in other words, "shut off federal courts altogether." *Id*. at 501.

Later, in *Spencer v. Kemna*, 523 U.S. 1 (1998), five Justices agreed with Justice Souter's concurrence in *Heck*. There, the claimant was released from incarceration while he was pursuing state challenges to his parole revocation. *Id*. at 5-6. The Court concluded that a federal habeas petition was moot because the plaintiff had completed his term of incarceration and was unable to show sufficient collateral consequences.

Justice Souter (joined by Justices O'Connor, Ginsburg, and Breyer) reiterated that "*Heck* did not hold that a released prisoner" without a habeas remedy "is out of court on a [Section] 1983 claim," and "it would be unsound to read either *Heck* or the habeas statute as requiring any such result." *Spencer,* 523 U.S. at 19. Justice Ginsburg wrote as well: "Individuals without recourse to the habeas statute because they are not 'in custody'

(people merely fined or whose sentences have been fully served, for example) fit within [Section] 1983's 'broad reach.'" *Id.* at 21 (Ginsburg, J., concurring). And Justice Stevens agreed: "Given the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear * * * that he may bring an action under 42 U.S.C. § 1983." *Id.* at 25 n.8 (Stevens, J., dissenting).

The Court has subsequently confirmed that the reach of *Heck* should be measured by the scope of the federal habeas statute. In *Nelson v. Campbell*, 541 U.S. 637 (2004), the Court held that Section 1983 was the appropriate means for the plaintiff to challenge the method of his execution. In finding *Heck* inapplicable, the Court explained that the "'favorable termination' requirement is necessary to prevent inmates from * * * challeng[ing] the fact or duration of their confinement without complying with the procedural limitations of the federal habeas statute," but should not "cut off potentially valid damages actions as to which a plaintiff might never obtain favorable termination." *Id.* at 646-47.

Likewise, in *Muhammad*, the Court explained that "conditioning the right to bring a [Section] 1983 action on a favorable result in state litigation or federal habeas served the practical objective of preserving limitations on the availability of habeas remedies;" but where "[t]here is no need to preserve the *habeas exhaustion rule*," there is "no impediment under

*Heck*." 540 U.S. at 751-52 (emphasis added); *see also Wallace v. Kato*, 549 U.S. 384, 398 (2007) (Stevens, J., concurring) (*Heck* "reconcile[d] [Section] 1983 with the federal habeas corpus statute").

Thus, because the *Heck* bar is coterminous with federal habeas, where an individual never had access to the habeas remedy, *Heck* does not apply. This approach properly "[h]armoniz[es] [Section] 1983 and the habeas statute." *Heck*, 512 U.S. at 501 (Souter, J., concurring). Any other result would leave broad categories of individuals—such those incarcerated for a short period of time; individuals sentenced only to probation, a fine, or community service; and persons who uncover evidence of a constitutional violation after release from custody—without any access to a federal forum to vindicate their federal rights. Nothing in either *Heck* or the habeas statute suggests, much less compels, such an untoward result. The federal forum should remain open to these claims, limited only to the extent necessary to protect the habeas statute against circumvention.

    3.    The majority of circuits recognize that *Heck* does not apply in these circumstances.

Against this backdrop, seven courts of appeals have concluded that the *Heck* favorable-termination rule does not bar a claim by an individual, like Deemer, who never had recourse to federal habeas relief. The result should be no different here.

Most recently, the Tenth Circuit canvassed the "circuit split" and joined the majority of circuits that do not apply *Heck* in these circumstances. In *Cohen*, 621 F.3d at 1315, an individual in immigration custody challenged his incarceration via a federal habeas petition, but he was transferred out of custody, mooting a pending habeas action. The court concluded that "[i]f a petitioner is unable to obtain habeas relief—at least where this inability is not due to the petitioner's own lack of diligence—it would be unjust to place his claim for relief beyond the scope of [Section] 1983." *Id.* at 1316-17. Thus the court held "that a petitioner who has no available remedy in habeas, through no lack of diligence on his part, is not barred by *Heck* from pursuing a [Section] 1983 claim." *Id.* at 1317.

In so concluding, the Tenth Circuit drew heavily on the Sixth Circuit's holding in *Powers*. Reviewing *Heck* and *Spencer*, that court determined that *Heck* does not apply "if the plaintiff was precluded 'as a matter of law' from seeking habeas redress," but it does apply "if the plaintiff could have sought and obtained habeas review while still in prison but failed to do so." *Powers,* 501 F.3d at 601. *Heck* thus did not apply where a plaintiff's "term of incarceration—one day—was too short to enable him to seek habeas relief." *Id.*

The Fourth Circuit reached the same result on facts very similar to those present in this case. In *Wilson v. Johnson*, 535 F.3d 262 (4th Cir. 2008), a prisoner's release date was extended by approximately three months. Following the extension, the prisoner filed administrative grievances, but the Virginia Department of Corrections did not resolve his claim administratively prior to his release. *Id.* at 263-64. Because of this short period of incarceration, the prisoner could not obtain relief via federal habeas. *Id.* at 268 n.8. The court concluded that *Heck*'s favorable-termination requirement does not apply in circumstances where "a prisoner could not, as a practical matter, seek habeas relief." *Id.* at 268. The court explained that it "d[id] not believe that a habeas ineligible former prisoner seeking redress for denial of his most precious right—freedom—should be left without access to a federal court." *Id.*

The Second, Seventh, Ninth, and Eleventh Circuits each follow a similar approach. *See, e.g., Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999); *Nonnette v. Small*, 316 F.3d 872, 876-77 (9th Cir. 2002); *Morrow v. Fed. Bureau of Prisons*, 610 F.3d 1271, 1272 (11th Cir. 2010).[7]

---

[7]  *Morrow*, like *Wilson*, involved facts very similar to those present in this case. There, the plaintiff alleged that Bureau of Prisons had miscalculated his release date, resulting in his incarceration 10 days beyond his proper
(cont'd)

The First, Fifth, and Eighth Circuits, however, appear to apply *Heck*'s favorable termination rule even where a claimant never had access to federal habeas. *See Figueroa v. Rivera*, 147 F.3d 77, 81 (1st Cir. 1998); *Randell v. Johnson*, 227 F.3d 300, 301-02 (5th Cir. 2000); *Entzi v. Redmann,* 485 F.3d 998, 1003-04 (8th Cir. 2007). They generally reason that the rule we urge "would fly in the teeth of *Heck*." *Figueroa*, 147 F.3d at 81. But as the Sixth Circuit observed in *Powers*, "[t]hese courts have mistaken the ordinary rule refinement that appellate courts necessarily engage in for an improper departure from binding Supreme Court precedent." 501 F.3d at 602. As we explained (*supra*, at 11-12), "[t]he *Heck* Court was not confronted with a factual scenario * * * in which the [Section] 1983 claimant has no recourse in habeas." *Id.* Indeed, "the Supreme Court itself has recognized this issue to be an unsettled one." *Cohen*, 621 F.3d at 1316 (citing *Muhammad*, 540 U.S. at 752 n.2).

This Court should join the majority approach: *Heck* does not bar a Section 1983 claim by an individual, who, through no fault of his or her own, never had recourse to federal habeas.

---

release date. 610 F.3d at 1272. The court held that "*Heck*'s rule [does not] extend to a case like this one * * * in which the alleged length of unlawful imprisonment * * * is obviously of a duration that a petition for habeas relief could not have been filed and granted while Plaintiff was unlawfully in custody." *Id.*

### C.     Deemer Never Had Access To Federal Habeas.

After the Board refused to credit Deemer the 366 days he served pursuant to the Board detainer and thereby incorrectly calculated Deemer's release date, Deemer diligently pursued his state remedies. This was a necessary prerequisite to seeking federal habeas relief. He petitioned to the Board for relief, and he subsequently filed a petition for review in the Commonwealth Court of Pennsylvania. The court never reached the merits, however, because it found—at Pennsylvania's urging—that Deemer's release from prison mooted his claim.

No court, accordingly, has ever resolved whether the Board violated Deemer's constitutional rights in denying him credit for the 366 days of time he served on a Pennsylvania Board detainer. Because federal habeas relief was unavailable to Deemer through no fault of his own, his Section 1983 claim is not barred by *Heck*'s favorable-termination rule.

### CONCLUSION

The Court should reverse the order of the district court that granted appellees' motion to dismiss and remand the case for further proceedings.

Dated:   August 21, 2013              Respectfully submitted,

                                      /s/ Paul W. Hughes
                                      Charles A. Rothfeld
                                      Paul W. Hughes
                                      (D.C. Bar. No. 997235)
                                      Michael B. Kimberly
                                      Jason R. LaFond
                                        MAYER BROWN LLP
                                        1999 K Street NW
                                        Washington, DC 20006
                                        (202) 263-3000
                                        phughes@mayerbrown.com

                                      Philip D. Lauer
                                        LAUER & SLETVOLD, P.C.
                                        701 Washington Street
                                        Easton, PA 18042
                                        (610) 258-5329

                                      *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel for Plaintiff-Appellant certifies that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 6,229 words, including footnotes and excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii);

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2007 and is set in Century Schoolbook font in a size equivalent to 14 points or larger;

(iii)    is identical to the ten hard copies sent to the Clerk of the Court on November 6, 2012 via overnight courier service; and

(iv)    has been scanned with Symantec Endpoint Protection and no virus was detected.

Dated: August 21, 2013                /s/ Paul W. Hughes
                                      Paul W. Hughes
                                      MAYER BROWN LLP

## THIRD CIRCUIT RULE 28.3(d) CERTIFICATION

Pursuant to Third Circuit Rule 28.3(d), the undersigned counsel for Plaintiff-Appellant certifies that Charles A. Rothfeld and Paul W. Hughes are both members of the bar of this Court.


Dated: August 21, 2013              /s/ Paul W. Hughes
                                    Paul W. Hughes
                                    MAYER BROWN LLP

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff-Appellant certifies that the foregoing brief was served upon all counsel of record via the Court's electronic CM/ECF system on August 21, 2013.

The undersigned counsel further certifies that, on August 21, 2013, ten identical hard copies of the foregoing brief were provided to a third-party courier for overnight delivery to the Clerk of the Court.

Dated: August 21, 2013          /s/ Paul W. Hughes
                                Paul W. Hughes
                                MAYER BROWN LLP